J-S13030-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: M.E.K., AN ALLEGED INCAPACITATED ADULT INDIVIDUAL | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: M.K. | : : : : : : : | |
| | : | No. 1362 WDA 2018 |

Appeal from the Order Entered August 20, 2018
In the Court of Common Pleas of Elk County
Orphans' Court at No(s):  No. 2018-0029

BEFORE:   BENDER, P.J.E., OTT, J., and STRASSBURGER*, J.

MEMORANDUM BY OTT, J.:                    **FILED AUGUST 13, 2019**

M.K. ("Father") appeals from the order entered August 20, 2018, in the Elk County Court of Common Pleas, Orphans' Court Division, finding his adult son, M.E.K., to be an incapacitated person and appointing T.A.B., M.E.K.'s mother ("Mother"), as permanent guardian of his person and estate.  On appeal, Father contends the orphans' court abused its discretion when it appointed Mother as M.E.K.'s permanent guardian.  For the reasons below, affirm.

After initial review by this panel, we remanded the case to the orphans' court to provide a more detailed opinion explaining the factual basis for its order appointing Mother as M.E.K.'s guardian.  The orphans' court complied with our directive, and, on June 27, 2019, issued a supplemental opinion explaining the reasons for its decision.

_____
*   Retired Senior Judge assigned to the Superior Court.

As we noted in our prior memorandum, Father instituted guardianship proceedings on May 14, 2018, seeking (1) an adjudication of incapacity for his adult son, M.E.K., and (2) appointment as M.E.K.'s permanent guardian. The petition alleged that M.E.K., now 24 years old, was diagnosed with Down's Syndrome at birth, and is "unable to make and communicate responsible decisions about his person and estate" without the assistance of Father and Mother. Petition for Adjudication of Incapacity and Appointment of Emergency and Permanent Guardian of the Estate and Person, 5/14/2018, at ¶ 18. The petition also alleged that Mother intended to relocate to North Carolina in May of 2018, and take M.E.K. with her. *See id.* at ¶ 12.

An initial hearing was held on June 28, 2018, before the Honorable Richard Masson, President Judge of the Elk County Court of Common Pleas.[1] At that hearing, two witnesses testified regarding the services provided to M.E.K.: Tonya Hildebrant, his intellectual disability support coordinator since 2005, and Jennifer Greenthaner, a community program specialist. M.E.K.'s individual support plan, prepared by Hildebrant in April of 2018, was entered into evidence as Petitioner's Exhibit 2. Because the court was unable to hear

---

[1] We note with approval that, prior to the initial hearing, the orphans' court appointed John R. Thomas, Esq., as counsel for M.E.K., the alleged incapacitated person. *See* Order, 5/16/2018. Attorney Thomas represented M.E.K.'s interests throughout the guardianship proceedings.

the testimony of Father and Mother, the matter was relisted for August 20, 2018.[2]

The August 20, 2018, hearing was presided over by visiting Senior Judge David E Grine. At the beginning of the hearing, Mother and Father stipulated that M.E.K. is in need of a guardian, so that the testimony could focus on the identification of the most appropriate appointment.[3] Both Mother and Father testified, and two exhibits were entered into evidence: (1) Petitioner's Exhibit 3, an individual education plan (IEP) for M.E.K. dated October 16, 2012, and (2) Respondent's Exhibit 1, a Power of Attorney signed by M.E.K. on March 9, 2012, appointing Mother as his agent. At the conclusion of the hearing, Senior Judge Grine entered an order (1) declaring M.E.K. an incapacitated person, (2) appointing Mother as the permanent guardian of his person and estate, and (3) directing the parties to "attempt to work out an appropriate schedule

_____

[2] Father attempted to offer into evidence the deposition of M.E.K.'s family physician, Robert J. Schmidt, M.D. However, Mother objected because she claimed she did not receive notice of the deposition. The court took the matter under advisement, and indicated it would address the admissibility of the deposition at the relisted hearing. *See* N.T., 6/28/2018, at 3-6, 60. However, the admissibility of Dr. Schmidt's deposition was never discussed on the record at the August 20, 2018, hearing, and the notes of testimony do not indicate that it was admitted into evidence, although the original deposition is in the certified record.

[3] M.E.K.'s appointed attorney stated that he was unable to "dispute or consent to that stipulation" because M.E.K. was "unable to verbalize [] consistently what his position is regarding whether or not he needs a guardian or who that guardian should be." N.T., 8/20/2018, at 4.

in the best interests of M.E.K." Order, 8/20/2018. Father subsequently filed this timely appeal.[4]

Both of the issues Father raises on appeal assert the orphans' court abused its discretion in appointing Mother as M.E.K.'s permanent guardian. It is well-established that "[t]he selection of a guardian for a person adjudicated incapacitated lies within the discretion of the trial court whose decision will not be reversed absent an abuse of discretion." **Estate of Haertsch**, 649 A.2d 719, 720 (Pa. Super. 1994). "An abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will." **In re Duran**, 769 A.2d 497, 506 (Pa. Super. 2001).

First, Father contends the court abused its discretion in appointing Mother as guardian when she "never filed an Answer to the Petition, nor did she file a Petition on her own behalf nor did she file a Petition to Intervene in the action filed by [Father]." Father's Brief at 9. We find this argument specious.

Section 5511 of the Probate, Estates and Fiduciaries Code explicitly provides that the court "may appoint as guardian any qualified individual"

---

[4] On September 27, 2018, the orphans' court ordered Father to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Father complied with the court's directive and filed a concise statement on October 15, 2018. As noted *supra*, the orphans' court filed an initial opinion in support of its decision on November 19, 2018. However, we directed the court to provide a more detailed explanation for its decision, and the facts relied upon to reach that decision. The court complied, and filed a supplemental opinion on June 27, 2019.

- 4 -

whose interests do not "conflict with those of the incapacitated person[.]" 20 Pa.C.S. § 5511(f). Father cites no authority requiring a person to take some affirmative action – such as filing a petition for appointment, answering a petition filed by another interested party, or seeking to intervene in an action filed by another interested party - before being appointed guardian. Indeed, there is no such requirement in the statute or common law. As Mother is a "qualified individual" whose interests do not conflict with M.E.K., the orphans' court had the authority to appoint her as guardian.

Next, Father challenges the court's underlying bases for appointing Mother as M.E.K.'s permanent guardian, particularly when Father was "ready, willing and able to be the guardian" and had "acted as a joint legal and physical custodian of M.E.K. since [his] birth[.]" Father's Brief at 15. Specifically, Father asserts the trial court erred in relying upon a March 2012 document, purportedly executed by M.E.K., appointing Mother as his power of attorney. **See** Father's Brief at 11-14. He maintains M.E.K. did not have the "intellectual capacity to fully appreciate the legal consequences" of the document, and Mother took steps to hide the power of attorney from Father. **Id.** at 14. Moreover, Father emphasizes he was "engaged in every aspect of M.E.K.'s life." **Id.** at 16. He insists Mother's intended move with M.E.K. to North Carolina will deprive M.E.K. of the programs and community-based employment opportunities he now enjoys which allow him to be integrated into the community. **See id.** at 17.

In addressing this argument in its supplemental opinion, the orphans'
court preliminarily stated both Father and Mother agreed that M.E.K. was
diagnosed with Down's Syndrome,[5] and stipulated to the fact that he is in
need of a guardian. *See* Explanation of the Reasons for the Court's Decision,
6/27/2019, at 2. With regard to its decision to appoint Mother as M.E.K.'s
sole guardian, the court opined:

> In support of this decision, the Court relied upon evidence and
> testimony presented during the two hearings conducted on June
> 28, 2018 and August 20, 2018. When asked who M.E.K. wanted
> to live with during an individual support program meeting around
> April 2018, M.E.K. initially indicated he wanted to go with
> [Mother], but M.E.K. changed his mind back and forth. Ms.
> Hildebrant also testified that [Father] challenged M.E.K.'s decision
> to move with [Mother] during that meeting. After M.E.K.
> expressed his opinion that he wished to move with [Mother],
> [Father] indicated to everyone in the room, including M.E.K., that
> M.E.K. and [he] made a list of all the things M.E.K. would miss if
> he were to go with [Mother] to North Carolina. [Mother] testified
> that, on or around May 11, 2018, the night prior to her leaving for
> North Carolina, she asked M.E.K. if he wanted to go to North
> Carolina, and if he did, they would be leaving in the morning, and
> if he did not, she would call [Father] so that he could stay with
> him. According to [Mother's] testimony, M.E.K. said he wanted to
> go with her to North Carolina. Ms. Hildebrant expressed that
> based on her experience[] working with M.E.K. and having visits
> around M.E.K. and [Mother], [Mother] gives him the opportunity
> to make his own choices.
>
> Furthermore, testimony from [Father] indicated that M.E.K.
> does not manage his own money; [Mother] manages M.E.K.'s
> money and is the payee for M.E.K.'s social security benefits.
> [Mother] also testified that she files tax returns on M.E.K.'s behalf

---

[5] The court emphasized that it relied upon Dr. Schmidt's deposition only for
this diagnosis, which neither parent contested. *See* Explanation of the
Reasons for the Court's Decision, 6/27/2019, at 2.

every year. [Mother] testified that while she takes M.E.K. to most of his appointments, such as the eye doctor and dentist, [Father] takes M.E.K. to the dermatologist. [Mother] also testified that while she is the payee on M.E.K.'s social security benefits, M.E.K. has been learning how to take care of himself and do things such as manage his own bank account. M.E.K. has learned to subtract money and put his checks in the bank. Ms. Hildebrant indicated that based on her home visits, M.E.K. is very well taken care of from what she can observe. Ms. Hildebrant testified that M.E.K. indicates that while with his father, he goes out to eat all of the time, but when with his mother, Ms. Hildebrant has observed during home visits that [Mother] typically prepared healthy meals. Ms. Hildebrant indicated that most of the home visits were while M.E.K. was with [Mother].

While the court considered [M.E.K.'s] involvement in activities in and around Elk County, Pennsylvania, that he would be able to continue participating in, including working at Elcam, testimony from [Mother] indicated that she has begun to get M.E.K. involved in activities in North Carolina. M.E.K. was to have an appointment at Johnston County Industries where they would train him for a job similar to what he does with Elcam. Furthermore, he was enrolled in the Special Olympics in North Carolina. [Mother] testified about her desire for M.E.K. to become familiar with the area she moved to in North Carolina because "that's where [M.E.K.] is going to end up one day, when his father and I are gone, with his sisters." M.E.K. also has a substantial amount of family members living in North Carolina. These family members include his two sisters, two nephews, his niece and his brother-in-law. In the Elk County area, M.E.K.'s family would include [Father] and maternal grandmother. While it seems that [Father] does take M.E.K. to the majority of his activities, especially those involving sports, [Mother] is the main caretaker of M.E.K. as she takes him to the majority of his appointments, works to teach M.E.K. life skills, such as managing his money, and is the payee of his social security benefits.

*Id.* at 3-4 (record citations omitted).

Based upon our review of the record, we find no abuse of discretion and conclude the court's supplemental explanation provides ample justification for its decision to appoint Mother as sole permanent guardian. ***See Haertsch***,

*supra*. In particular, we emphasize the court's determination that Mother's reasons for moving M.E.K. to North Carolina reflected her concern for M.E.K.'s future. *See* Explanation of the Reasons for the Court's Decision, 6/27/2019, at 4. Indeed, Mother testified she believed it was beneficial for M.E.K. to remain in North Carolina "[b]ecause that's where [he's] going to end up one day, when his father and I are gone, with his sisters." N.T., 8/20/2018, at 70. She further stated:

> I think he needs to learn the area. He needs to grow and learn more how to take care of himself, how to get himself around, how to deal with the area, and I think North Carolina can give him that.

*Id.*

We note that, in our prior memorandum, we expressed concern that the orphans' court may have relied on Mother's power of attorney as a reason to appoint her as M.E.K.'s sole guardian. We were troubled by the fact that M.E.K. may have not been intellectually capable of understanding the ramifications of such a document at the time he signed it. However, in its supplemental explanation, the orphans' court stated the power of attorney executed by M.E.K. in 2012 "did not carry any weight in [the] Court's decision to appoint [Mother] as guardian of M.E.K." Explanation of the Reasons for the Court's Decision, 6/27/2019, at 5.

Therefore, because we find Father has failed to establish the orphans' court abused its discretion when it appointed Mother as permanent guardian of M.E.K., we affirm the order on appeal.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/13/2019